## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————————— )
BRIAN YOO,                                                )
                                                          )
                         Plaintiff                        )
                                                          )
              v.                                          )        Docket No:_____
                                                          )
                                                          )        **JURY TRIAL**
                                                          )        **DEMANDED**
AMBATANA, INC., LETGO, INC.,                              )
LETGO DEVELOPMENT US AND                                  )
CHAD CRAMER,                                              )
                                                          )
                                                          )
                         Defendants                       )
———————————————————————— )

## <u>COMPLAINT AND JURY DEMAND</u>

### <u>PARTIES</u>

1.      The plaintiff, Brian Yoo ("Mr. Yoo" or "Plaintiff"), is a male resident of the State

of New York residing at 107 East 63rd Street, Apt 6A, New York, NY 10012.

2.      Defendant Ambatana, Inc. ("Ambatana") is a foreign corporation with its

principal office located at 1321 Upland Drive, PMB 15342, Houston, TX 77043.

3.      Defendant Letgo, Inc. ("Letgo") is a foreign corporation with its principal office

located at 1321 Upland Drive, PMB 15342, Houston, TX 77043.

4.      Defendant Letgo Development US ("Development") ("Letgo," "Ambatana," and

"Development," individually and collectively, the "Company") is a foreign corporation with its

principal office located at 1321 Upland Drive, PMB 15342, Houston, TX 77043.

5.      Defendant Chad Cramer ("Cramer") is an adult male, and, upon information and belief, resides in New York. At all relevant times, Cramer was the Director of Inside Sales for the Company. Cramer is named in both his individual and official capacities.

## JURISDICTION AND VENUE

6.      The court has subject matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff has brought federal claims, including claims under Title VII, 42 U.S.C. § 2000e-2, et al., Section 1981 ("1981") 42 U.S.C. § 1981, and the Family and Medical Leave Act (FMLA) 29 U.S.C. §2615. The court may exercise supplemental jurisdiction over Mr. Yoo's state and city law claims. 28 U.S.C. § 1367.

7.      Venue is appropriate in the United States District Court for the Southern District of New York, as the acts or omissions giving rise to the claims in this Complaint occurred in Southern District of New York.

8.      This court has personal jurisdiction over Defendant Cramer because he is a resident of the State of New York. Additionally, Cramer has numerous contacts and connections with and within the State of New York.  For example, Cramer worked for the Company in New York, supervised Mr. Yoo in New York and terminated Mr. Yoo in New York.

9.      The court has personal jurisdiction over the Defendants Letgo, Ambatana, and Development because they engaged in and transacted business in the State of New York, including by managing and/or operating a business in the State of New York (located at 175 Varick Street, 1st Floor, New York, NY 10014) and/or by employing Mr. Yoo in the State of New York, and Mr. Yoo's causes of action stem largely from the Company's business transactions within the State of New York. Indeed, Mr. Yoo was employed by the Company (including each of Letgo, Ambatana, and Development) in New York, Mr. Yoo worked in the

State of New York, and Mr. Yoo was managed and terminated by the Company in the State of New York.

## **STATEMENT OF FACTS**

10.     In or around January 2018, Mr. Yoo was hired by the Company as an account executive based in the borough of Manhattan in New York, NY.

11.     Mr. Yoo is of Korean descent and is Asian in terms of his race.

12.     At all relevant times, Letgo, Ambatana, and Development were owned and operated by the same entities and/or individuals and constituted joint employers of Mr. Yoo.

13.     This included the sharing of the services of employees and/or interchanging employees, acting directly or indirectly in the interest of the other employer in relation to employees, and/or sharing control over employees.

14.     Likewise, each of Letgo, Ambatana, and Development were operated in an integrated way and constituted an integrated employer with regard to Mr. Yoo. For example, upon information and belief, Letgo, Ambatana, and Development shared common record keeping mechanisms, shared bank accounts and shared equipment.

15.     Additionally, each of Letgo, Ambatana, and Development shared common ownership and management and shared centralized control over employees and labor relations, such as setting schedules, hiring, firing, etc.

16.     Therefore, Letgo, Ambatana and Development were each Mr. Yoo's joint employers.

17.     At all relevant times, the Company (including Letgo, Ambatana, and Development, individually and collectively) was engaged in an industry affecting commerce and

employed 15 or more employees during 20 or more calendar weeks in each current and/or preceding calendar year.

18.     The entities within the Company (including Letgo, Ambatana, and Development, individually and collectively), constituted a single integrated employer for the purpose of the Family and Medical Leave Act (FMLA).

19.     During all relevant times, the Company was engaged in commerce or in an industry or activity affecting interstate commerce and employed 50 or more employees during 20 or more calendar weeks.

20.     At all relevant times, the Company (including each of Letgo, Ambatana, and Development, individually and collectively) employed 50 or more employees within a 75-mile radius of Mr. Yoo's worksite.

21.     Accordingly, at all relevant times, the Company (including each of Letgo, Ambatana, and Development, individually and when analyzed collectively as integrated employers) was a covered employer under the Family and Medical Leave Act ("FMLA").

22.     Mr. Yoo (at least as of January 2019) had worked for the Company for at least 12 months and in excess of 1250 hours during the preceding 12-month period, and as such was eligible for FMLA leave.

23.     At all relevant times, Mr. Yoo's worksite and home base were 488 Broadway, 5th Floor, New York, NY 10012.

24.     At all relevant times, Mr. Yoo was qualified for his position at the Company and his work performance was satisfactory.

25.     Throughout Mr. Yoo's employment, Cramer was Mr. Yoo's manager. Indeed, Cramer had the power to hire and/or fire Mr. Yoo supervised and controlled Mr. Yoo's

conditions of employment including his work schedule, played a role in determining Mr. Yoo's

rate and method of payment, and/or played a role in maintaining Mr. Yoo's employment records.

26.     Mr. Yoo would always work a total of at least 9 hours a day, five days a week,

arriving at work no later than 8am, working through his lunch break, and ending work at 5pm.

27.     All of these hours (at least 9 hours per day) were working time, as Mr. Yoo would

work through his lunch period and did not take off other breaks. Thus, Mr. Yoo was working for

all of these 9 hours (or more) per day.

28.     As such, Mr. Yoo, worked a total of at least 5 hours of overtime every week of his

employment through his termination on November 20, 2019, and often more.

29.     Furthermore, at a frequency of at least 3 days per week, Mr. Yoo would work

more than 9 hours per day due to the demands of his work. Thus, in most weeks, Mr. Yoo in fact

worked for more than 45 hours, sometimes significantly more.

30.     For example, during the week of September 2, 2019 through September 6, 2019,

Mr. Yoo worked 50 or more hours due to the demands of meeting increased revenue quotas.

Indeed, during every day of this week Mr. Yoo worked from 8am to at least 6pm, and worked

through his lunch break. This is but one illustrative example of the many weeks in which Mr.

Yoo worked significantly in excess of 45 hours.

31.     Mr. Yoo was not paid anything extra for the overtime hours he worked.

32.     As Mr. Yoo's commission was less than 50% of his compensation, and as Mr.

Yoo was not covered under any overtime exemptions, he was not exempt from overtime rules.

33.     The Company was aware that Mr. Yoo was a non-exempt employee under

relevant state and federal overtime pay laws and willfully failed to pay Mr. Yoo the wages he

was owed.

34.     Indeed, the Defendants scheduled Mr. Yoo to work more than 40 hours per week, and Mr. Yoo did in fact work more than 40 hours per week, every week of his employment.

35.     Cramer is a Caucasian, non-Korean individual.

36.     Cramer was not the hiring manager for the Company, and Mr. Yoo did not meet Cramer until Cramer's first day of work for the Company. Thus, upon information and belief, Cramer did not know that Mr. Yoo was Asian in terms of his race and Korean in terms of his ancestry until after Mr. Yoo had already been extended a job offer by the Company.

37.     That being said, after Mr. Yoo started work at the Company, Cramer learned that Mr. Yoo was Asian in terms of his race and likewise quickly learned that Mr. Yoo was Korean in terms of his ancestry and national origin.

38.     After Mr. Yoo started to work for the Company under Cramer's leadership, it became apparent relatively quickly that Cramer had a bias against Asians, particularly Asians of Korean descent.

39.     For example, on or around March 5, 2018, Mr. Yoo planned a dinner for the inside sales team (which Mr. Yoo was a member of and Cramer supervised) at a Korean BBQ restaurant so that members of the inside sales team could meet each other and get to know each other better.

40.     During this dinner, Cramer acted in a discriminatory and harassing manner towards the restaurant's Korean employees, including by ordering dishes in a fake, exaggerated, Asian accent and making fun of the waiters' Asian accents.

41.     Additionally, when the food came to the table, Cramer commented "is this dog?," making it clear he thought Koreans ate dog meat or other cuisine that he, as a non-Korean Caucasian, found to be disgusting and was biased against. This hostile behavior toward Koreans

and Korean culture was but one of a number of behaviors demonstrating that Cramer had a

discriminatory bias against Asians in general, and Koreans specifically.

42.     Throughout the evening, Cramer and other employees periodically looked directly

at Mr. Yoo and/or made harassing comments that appeared to be directed at him, in addition to

other Asian individuals in the vicinity. Mr. Yoo felt harassed and discriminated against, both

because of the treatment directed at him, and because the harassing treatment directed at others

based of their Asian race and Korean national origin and created a hostile work environment that

was disturbing to Mr. Yoo.

43.     In or around June 2018, Cramer continued this discriminatory behavior toward

Asians, especially of Korean descent, when Mr. Yoo and Cramer were waiting in an airport.

44.     Cramer, while watching a program about Korea, commented in a proud tone

about how the United States would bomb Korea into oblivion.

45.     Cramer also asked Mr. Yoo which side he (Mr. Yoo) would take if Korea invaded

the United States, implying that Mr. Yoo was not loyal to United States because of his Korean

origin or his Asian race.

46.     Mr. Yoo raised protected concerns to Cramer that he (Mr. Yoo) was of Korean

descent and made clear that he felt uncomfortable about the way Cramer was talking about his

country of descent, as well as how he was implying that Mr. Yoo was not a loyal American

because of his Korean ancestry.

47.     Cramer ignored Mr. Yoo's protected concerns and stated that the United States

should bomb Korea as soon as it could.

48.     Cramer then acted in a retaliatory manner towards Mr. Yoo for raising these

protected concerns, as immediately after Mr. Yoo raised protected concerns that Cramer's

comments were discriminatory against his race and national origin, Cramer subjected Mr. Yoo to quota requirements that were higher than those required of non-Asian and/or non-Korean Company employees.

49.     Mr. Yoo raised protected concerns about Cramer's retaliatory behavior, including by stating that it appeared Cramer had imposed these new quotas on him because of his (Cramer's) bias towards Asians, and particularly those of Korean descent, and/or in retaliation against Mr. Yoo because he had raised protected concerns about Cramer's discriminatory comments.

50.     Mr. Yoo, despite Cramer's discriminatory and/or retaliatory imposition of higher sales quotas, was able to meet his quotas every month through hard work.

51.     Then, in or around the start of September 2019, a new account executive was hired, Michael Emory Kennedy ("Kennedy").

52.     Kennedy is a Caucasian, non-Korean man.

53.     When Kennedy first met Mr. Yoo, he stated to other Caucasian employees within earshot of Mr. Yoo that Mr. Yoo looked "like a Chink, this guy's a Chink."

54.     A number of the other Caucasian employees, who heard Kennedy's overtly discriminatory and racist slur directed at Mr. Yoo laughed heartily.

55.     Kennedy even acknowledged that he had called Mr. Yoo this derogatory and harassing comment in an email he later sent to Mr. Yoo.

56.     Mr. Yoo, harassed and embarrassed by Kennedy calling him a "chink," and by other Caucasian co-workers laughing at Kennedy's discriminatory comment, quickly left the room.

57.     Within a week, Mr. Yoo, in a meeting with Cramer, raised protected concerns to Cramer that discriminatory and harassing comments such as Kennedy's (and the general acceptance of comments like this in the workplace) made him uncomfortable.

58.     Mr. Yoo also requested that Cramer put a stop to the discriminatory and harassing comments that he (Mr. Yoo) was being subjected to related to his race and ancestry.

59.     Cramer, instead of addressing the insensitivity and harassment towards Mr. Yoo's race and national origin, stated that Mr. Yoo was "causing a distraction" by raising protected concerns and threatened that if Mr. Yoo were to raise harassment concerns to the Human Resources department he would be subject to discipline or terminated.

60.     This comment was clearly intended to have a chilling effect on Mr. Yoo's willingness to engage in protected activities.

61.     Two months later, in or around November 3, 2019, Mr. Yoo's father became very ill from complications due to lung cancer, a serious health condition under the FMLA for which Mr. Yoo's father received continuing care.

62.     In order to care for his ailing father and take him to necessary, life-sustaining doctor's appointments, Mr. Yoo requested 5 days off from Cramer.

63.     This request constituted a leave request under the FMLA.

64.     Cramer became irate at Mr. Yoo's request for leave, which was protected under the FMLA, asking Mr. Yoo why he (Mr. Yoo) would take time off to aid his ailing father.

65.     Additionally, Cramer stated that he would not allow Mr. Yoo to take the full amount of leave requested, stating that he would only give Mr. Yoo at most 4 days off.

66.     Cramer further asked Mr. Yoo in a threatening tone if he (Cramer) were to deny this leave if Mr. Yoo would be going to Human Resources. Based on Cramer's previous threat

that if Mr. Yoo complained to Human Resources he would be fired or disciplined, it was clear that Cramer was again threatening Mr. Yoo that he would face retaliation if he raised any concerns or requests to Human Resources.

67.     Shocked at Cramer's harassing and threatening comments (as well as Cramer's improper partial denial of the leave request), Mr. Yoo reiterated to Cramer that he remained committed to his job and that this leave would be to take care of his father who needed life-saving treatment for his lung cancer, and that he (Mr. Yoo) believed he was legally entitled to take this leave.

68.     Cramer, after again angrily asking why Mr. Yoo needed this leave to take care of his father, begrudgingly and only partially approved Mr. Yoo's request, but only for 3.5 days (as Mr. Yoo worked a partial day on November 3, 2019), instead of Mr. Yoo's requested 5 days off. Cramer (and the Company) thus interfered with Mr. Yoo's FMLA rights by refusing to allow the full leave period requested by Mr. Yoo.

69.     Additionally, by his words, body language, and tone, Cramer made clear that he was angry at Mr. Yoo for requesting this leave and for asserting that he was legally entitled to it, and thus made it clear that Mr. Yoo might face retaliation for his actions.

70.     As such, Mr. Yoo commenced his FMLA leave on November 3, 2019, and returned to work on November 7, 2019.

71.     When Mr. Yoo returned to work on or around November 7, 2019, Mr. Yoo was immediately placed on a discriminatory and unjustified performance improvement plan ("PIP") by Cramer.

72.     The PIP was clearly discriminatory/retaliatory, as Mr. Yoo had never had any performance problems in the past, and Cramer had likewise never conveyed any meaningful performance concerns to Mr. Yoo prior to Mr. Yoo requesting protected leave.

73.     Indeed, at the time Mr. Yoo was placed on the discriminatory/retaliatory PIP, he was ranked first among the Company's account executives in terms of his sales and revenue numbers.

74.     By imposing this discriminatory and retaliatory PIP on Mr. Yoo, Cramer was singling Mr. Yoo out for harsher treatment in comparison to his Caucasian, non-Korean colleagues.

75.     For example, Mr. Yoo's other co-worker Frank Bellera ("Bellera") was also performing worse than Mr. Yoo and was not placed on a PIP or even disciplined.

76.     Bellera is a Caucasian non-Korean man.

77.     Mr. Yoo raised protected concerns that the PIP implemented by Cramer was entirely retaliatory and discriminatory, as he had no history of performance problems and the PIP appeared to have been suddenly and unjustifiably imposed on him alone because of his race, national origin, in retaliation for taking FMLA leave, or in retaliation for raising protected concerns about the discriminatory comments he had experienced.

78.     Cramer again refused to address Mr. Yoo's protected concerns and threatened to terminate Mr. Yoo if he failed to complete all the objectives on his discriminatory and retaliatory PIP.

79.     Indeed, for discriminatory and retaliatory reasons, the PIP appeared to be constructed to purposefully, and unjustifiably, make it difficult for Mr. Yoo to complete the objectives.

80.     Mr. Yoo, despite the discriminatory and retaliatory nature of the PIP, successfully completed all PIP objectives as of November 20, 2019.

81.     However, on or around November 20, 2019, Cramer terminated Mr. Yoo for alleged failure to meet the objectives of the PIP. This justification was of course untrue, as Mr. Yoo had successfully completed his PIP objectives, despite the PIP having been constructed to purposefully cause him to fail.

82.     As such, Mr. Yoo was involuntarily terminated from the Company on November 20, 2019.

83.     Mr. Yoo performed his job in a fully satisfactory manner and his PIP, which was used as the pretext for his ultimate termination, was motivated by discriminatory and/or retaliatory reasons.

84.     Indeed, Mr. Yoo either met or exceeded the goals required for his performance numbers.

85.     Notably, the Defendants' own PIP states that Mr. Yoo met the expectations of the PIP.

86.     Indeed, many of Mr. Yoo's Caucasian, non-Korean co-workers did not meet their quotas.

87.     The close proximity between Mr. Yoo's raising of protected concerns and/or taking protected leave to take care of his father on the one hand and the subsequent issuance of an unjustified PIP (constructed to make him fail) on the other makes it clear that this PIP was retaliatory and/or discriminatory in nature, and was intended merely to paper the file in order to provide a pretextual excuse to terminate Mr. Yoo's employment.

88.     The Company's reason for Mr. Yoo's termination was clearly pretextual, as other Caucasian, non-Korean employees, such as Bellera, were not terminated nor put on PIP despite performing at a much lower level than Mr. Yoo.

89.     Upon information and belief, the Company replaced Mr. Yoo with a similarly or lesser qualified non-Asian, non-Korean individual.

90.     The Company retaliated against Mr. Yoo for exercising rights protected under the FMLA by issuing him an unjustified PIP and ultimately terminating his employment for retaliatory reasons.

91.     Additionally, the Company never paid Mr. Yoo any overtime pay for the hours he worked over 40 hours per week as required by relevant federal and state laws.

92.     Mr. Yoo's termination took place in New York City, and Cramer (upon information and belief) was in New York City when he made the decision to fire Mr. Yoo, as well as when he in fact fired Mr. Yoo.

93.     On March 20, 2020, Mr. Yoo timely filed a Charge of Discrimination with the New York City Commission on Human Rights ("NYCCHR") and cross-filed this charge with the United States Equal Employment Opportunity Commission ("EEOC").

94.     On April 12, 2021, the NYCCHR granted Mr. Yoo an administrative closure to allow him to pursue his case in court.

95.     On April 13, 2021, the EEOC issued Mr. Yoo a Right to Sue letter.

96.     This lawsuit is timely filed.

**COUNT I**

**(Race and National Origin Discrimination in Violation of Title VII, 42 U.S.C. §§2000e, et seq.)**

**Plaintiff v. The Company (Letgo, Ambatana, and Development)**

97.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

98.    During all relevant periods, the Company was an employer under Title VII, 42 U.S.C. §§2000e, et seq. (hereinafter, "Title VII") because it was a person engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks during the relevant calendar years.

99.    The Company, by and through its agents, including, but not limited to, Cramer, harassed and discriminated against Mr. Yoo with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Yoo's race (Asian) and national origin (Korean ancestry).

100.    More specifically, by way of illustration, the Company subjected Mr. Yoo to a pattern of harassment including, but not limited to, while he was employed by the Company, by allowing employees, including his supervisor Cramer, to subject Mr. Yoo to harassing comments, including calling him a "chink," mimicking Asian accents in a demeaning manner, demeaning Asian cuisine and culture, questioning Mr. Yoo's loyalty to America as a Korean-American, and expressing the belief that Asians should be bombed or otherwise killed. .

101.    Mr. Yoo was further subjected to adverse actions, including, but not limited to, a harassing and hostile work environment, increased quota requirements, an inaccurate,

undeserved, and unfairly constructed PIP, and the termination of his employment, in a discriminatory manner because of his race and/or national origin.

102.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Yoo.

103.    As a direct and proximate result of the Company's violations of Title VII, Mr. Yoo has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

104.    Mr. Yoo seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT II

### (Race Discrimination in Violation of 42 U.S.C. § 1981, et seq.)

### Plaintiff v. All Defendants (including Letgo, Ambatana, Development and Cramer)

105.    The Plaintiff herein incorporates all paragraphs above and below as if set forth fully herein.

106.    During all relevant periods, the Company (including Letgo, Ambatana and Development, collectively and individually) and Cramer were persons under the meaning of 42 U.S.C. § 1981, et seq. (hereinafter, "Section 1981").

107.    The Company (including Letgo, Ambatana and Development, collectively and individually) and Cramer harassed and discriminated against Mr. Yoo with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Yoo's race (Asian).

108.    More specifically, by way of illustration, the Defendants subjected Mr. Yoo to a pattern of harassment including, but not limited to, subjecting Mr. Yoo to overtly discriminatory comments, including calling him a "chink," mimicking Asian accents in a demeaning manner, demeaning Asian cuisine and culture, questioning Mr. Yoo's loyalty to America as a Korean-American, and expressing the belief that Asians should be bombed or otherwise killed.

109.    Mr. Yoo was further subjected to adverse actions, including, but not limited to, a harassing and hostile work environment, increased quota requirements, an inaccurate, undeserved, and unfairly constructed PIP, and the termination of his employment, in a discriminatory manner because of his race and/or national origin.

110.    Cramer aided, abetted, incited, compelled and/or coerced the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under Section 1981.

111.    Defendants acted with malice and/or with reckless indifference to the federally protected rights of Mr. Yoo.

112.    As a direct and proximate result of the Defendants' violations of Section 1981, Mr. Yoo has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

113.     Mr. Yoo seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT III

**(Race and National Origin Discrimination in Violation under New York State Human Rights Law, Executive Article 15, Section 296))**

**Plaintiff v. All Defendants (including Letgo, Ambatana, Development and Cramer)**

114.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

115.     The Company is an employer under the New York State Human Rights Law (NYSHRL) because it employs six or more persons.

116.     Mr. Yoo is Asian in terms of his race and Korean in terms of his national origin (through Korean ancestry).

117.     The Defendants, including, but not limited to, its agents, harassed and discriminated against Mr. Yoo with respect to his compensation, terms, conditions or privileges of employment, because of Mr. Yoo's race (Asian) and national origin (Korean).

118.     More specifically, the Defendants subjected Mr. Yoo to a pattern of racial and national origin discrimination while he was employed by the Defendants, including, but not limited to, subjecting Mr. Yoo to overtly discriminatory comments, including individuals in supervisory positions, including Cramer, calling him a "chink," mimicking Asian accents in a demeaning manner, demeaning Asian cuisine and culture, questioning Mr. Yoo's loyalty to

America as a Korean-American, and expressing the belief that Asians should be bombed or otherwise killed.

119.    Mr. Yoo was further subjected to adverse actions, including, but not limited to, a harassing and hostile work environment, increased quota requirements, an inaccurate, undeserved, and unfairly constructed PIP, and the termination of his employment, in a discriminatory manner because of his race and/or national origin.

120.    Mr. Yoo was further subjected to adverse actions, including, but not limited to, a harassing and hostile work environment, increased quotas (in relation to his non-Asian, non-Korean co-workers), an inaccurate, undeserved, and unfair PIP and the termination of his employment, in a discriminatory manner because of his race and/or national origin.

121.    Cramer aided, abetted, incited, compelled and/or coerced the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

122.    The Defendants' actions were wanton, malicious, and/or oppressive. The Defendants acted willfully and/or with reckless disregard to the state protected rights of Mr. Yoo.

123.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Mr. Yoo has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

124.    Mr. Yoo seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses),

damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT IV

### (Race and National Origin Discrimination under New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)

### Plaintiff v. All Defendants (including Letgo, Ambatana, Development and Cramer)

125.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

126.     The Company was an employer under the New York City Human Rights Law ("NYCHRL").

127.     Mr. Yoo is Asian in terms of his race and Korean in terms of his national origin.

128.     The Defendants, including, but not limited to, its agents, harassed and discriminated against Mr. Yoo with respect to his compensation, terms, conditions or privileges of employment, because of Mr. Yoo's race (Asian) and national origin (Korean).

129.     More specifically, the Defendants subjected Mr. Yoo to a pattern of racial and national origin discrimination while he was employed by the Defendants, including individuals in supervisory positions, including Cramer, subjecting Mr. Yoo to racial slurs, including calling him a "chink," mimicking Asian accents in a demeaning manner, demeaning Asian cuisine and culture, questioning Mr. Yoo's loyalty to America as a Korean-American, and expressing the belief that Asians should be bombed or otherwise killed.

130.     Mr. Yoo was further subjected to adverse actions, including, but not limited to, a harassing and hostile work environment, increased quotas (in relation to his non-Asian, non-

Korean co-workers), an inaccurate and undeserved negative PIP, and the termination of his employment in a discriminatory manner because of his race and/or national origin.

131.    Cramer aided, abetted, incited, compelled and/or coerced the Company's discriminatory conduct, including, but not limited to, by providing or attempt to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

132.    The Defendants' actions were wanton, malicious, and/or oppressive. The Defendants acted willfully and/or with reckless disregard to the state protected rights of Mr. Yoo.

133.    As a direct and proximate result of the Defendants' violation of the NYCHRL, Mr. Yoo has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

Mr. Yoo seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

**COUNT V**

**(Interference with, and Retaliation for Exercising, Rights under the Family and Medical Leave Act – 29 U.S.C. §2615)**

**Plaintiff v. All Defendants (including Letgo, Ambatana, Development and Cramer)**

134.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

135.    During all relevant times, the Company was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

136.    As such, at all relevant times, the Company was an employer under the FMLA.

137.    At all relevant times, the Company (including each of Letgo, Ambatana, Development, as well as the Company collectively when analyzed as an integrated employer) employed 50 or more employees within 75 miles of Mr. Yoo's worksite.

138.    At all relevant times, Letgo, Ambatana and Development were owned and operated by the same entities and/or individuals and constituted joint employers of Mr. Yoo.

139.    This included the sharing of the services of employees and/or interchanging employees, acting directly or indirectly in the interest of the other employer in relation to employees, and/or sharing control over employees.

140.    Additionally (or in the alternative), each of Letgo, Ambatana and Development were operated in an integrated way and constituted an integrated employer with regard to Mr. Yoo. For example, upon information and belief, Letgo, Ambatana and Development shared common record keeping mechanisms, shared bank accounts and shared equipment.

141.    Additionally, each of Letgo, Ambatana and Development shared common ownership and management and shared centralized control over employees and labor relations, such as setting schedules, hiring, firing, etc.

142.    The entities within the Company (including Letgo, Ambatana and Development, both individually and collectively), constituted a single integrated employed for the purpose of the Family and Medical Leave Act (FMLA).

143.    Accordingly, the Company (both collectively and each of Letgo, Ambatana and Development individually) was an employer covered by the FMLA.

144.    At all relevant times (from at least January 2019 onward), Mr. Yoo had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

145.    As such, from January 2019 onward, Mr. Yoo was an eligible employee under the FMLA.

146.    Mr. Yoo sought to take leave to take care of his ailing father, who suffered from complications due to lung cancer, a serious health condition under the FMLA.

147.    Mr. Yoo was entitled to FMLA leave.

148.    Mr. Yoo sought to exercise his rights under the FMLA, including by requesting and utilizing one or more protected leaves under the FMLA.

149.    Cramer was an employer under the FMLA because he had the power to hire and/or fire Mr. Yoo (and in fact used this power to fire Mr. Yoo), supervised and controlled Mr. Yoo's conditions of employment including his work schedule, played a role in determining Mr. Yoo's rate and method of payment, and/or maintained Mr. Yoo's employment records.

150.    Mr. Yoo timely notified Defendants that he would need FMLA leave.

151.    Specifically, Mr. Yoo sought to exercise continuous leave in the form of taking leave from the Company to care for his ailing father suffering from lung cancer.

152.    The Defendants, including by and through their agents, interfered with Mr. Yoo's rights under the FMLA, including but not limited to, by denying Mr. Yoo a portion of the leave he requested to care for his ailing father suffering from lung cancer.  Indeed, the Defendants forced Mr. Yoo to take less leave than he requested by approving only a portion of his requested leave.

153.    The Defendants, including by and through their agents, retaliated and/or discriminated against Mr. Yoo for requesting and/or utilizing FMLA leave by subjecting Mr. Yoo to adverse actions, including, but not limited to, subjecting Mr. Yoo to a harassing and otherwise hostile work environment, subjecting Mr. Yoo to an arbitrary, unjustified, and unfair PIP immediately after he returned from FMLA leave and/or terminating Mr. Yoo's employment.

154.    The Defendants' actions were willful and undertaken in bad faith.

155.    As a direct and proximate result of the Defendants' violation of the FMLA, Mr. Yoo has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

156.    Mr. Yoo seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

## COUNT VI

**(Retaliation in Violation of Title VII, 42 U.S.C. §§2000e, et seq.)**

**Plaintiff v. The Company (Letgo, Ambatana, and Development)**

157.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

158.    During all relevant periods, the Company was an employer under Title VII, 42 U.S.C. §§2000e, et seq. (hereinafter, "Title VII") because it was a person engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks during the relevant calendar years.

159.    The Company, by and through its agents and affiliates, including, but not limited to Cramer, harassed and discriminated against Mr. Yoo with respect to his compensation, terms, conditions, or privileges of employment, because of Mr. Yoo's race and/or national origin.

160.    Mr. Yoo engaged in protected activity under Title VII, including, but not limited to, by expressing protected concerns regarding, and otherwise opposing, the harassment and discrimination he and others were being subjected to, based on the race and national origin of himself and others.

161.    The Company discriminated against and/or retaliated against Mr. Yoo for engaging in activity protected under Title VII, including by subjecting Mr. Yoo to a hostile and harassing workplace, increased quotas in comparison to his non-Asian, non-Korean co-workers, an unjustified and unfair PIP, and the termination of Mr. Yoo's employment.

162.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Yoo.

163.     As a direct and proximate result of the Company's violations of Title VII, Mr.

Yoo has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering,

loss of enjoyment of life, and emotional damages.

164.     Mr. Yoo seeks all damages to which he is entitled, including, but not limited to,

lost compensation and benefits (including, but not limited to, back pay and front pay),

diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses),

punitive damages, attorneys' fees, interest, and costs.

## COUNT VII

### (Retaliation in Violation of 42 U.S.C. § 1981, et seq.)

### Plaintiff v. All Defendants (including Letgo, Ambatana, Development and Cramer)

165.     The Plaintiff herein incorporates all paragraphs above and below as if set forth

fully herein.

166.     During all relevant periods, the Company and Cramer were persons under the

meaning of 42 U.S.C. § 1981, et seq. (hereinafter, "Section 1981").

167.     Mr. Yoo engaged in protected activity under Section 1981, including, but not

limited to, by expressing protected concerns regarding, and otherwise opposing, the harassment

and discrimination he and others were being subjected to, based on the race and national origin

of himself and others.

168.     Defendants discriminated against and/or retaliated against Mr. Yoo for engaging

in activity protected under Section 1981, including by subjecting Mr. Yoo to a hostile and

harassing workplace, increased quotas in relation to his non-Asian co-workers, an unjustified and unfair PIP, and the termination of Mr. Yoo's employment.

169.    The Defendants acted with malice and/or with reckless indifference to the federally protected rights of Mr. Yoo.

170.    Cramer aided, abetted, incited, compelled and/or coerced the Company's retaliatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under Section 1981.

171.    As a direct and proximate result of the Defendants' violations of Section 1981, Mr. Yoo has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

172.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT VIII

**(Retaliation for Engaging in Protected Activity in Violation of New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (including Letgo, Ambatana, Development and Cramer)**

173.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

174.    Mr. Yoo engaged in protected activity(ies) under the NYSHRL, including, but not limited to, by expressing protected concerns regarding, and otherwise opposing, the harassment and discrimination he and others were subjected to, based on the race and national origin of himself and others.

175.    The Defendants unlawfully coerced, intimidated, threatened and/or interfered with Mr. Yoo's exercising of or enjoyment of rights granted by the NYSHRL.

176.    Defendants discriminated against and/or retaliated against Mr. Yoo for engaging in activity protected under the NYSHRL, including by subjecting Mr. Yoo to a hostile and harassing workplace, increased quotas in relation to his non-Asian, non-Korean co-workers, an unjustified and unfair PIP, and the termination of Mr. Yoo's employment.

177.    Cramer aided and abetted in the Company's discriminatory actions, intended to discriminate against and/or retaliate against and/or coerce, intimidate, threaten and/or interfere with Mr. Yoo's exercising of, or enjoyment of, one or more rights granted by the NYSHRL, and/or knew of their supporting role in an enterprise designed to deprive Mr. Yoo of the rights guaranteed to him under the NYSHRL.

178.    The Defendants' actions were wanton, malicious, and/or oppressive.

179.     The Defendants acted willfully and/or with reckless disregard to the state protected rights of Mr. Yoo.

180.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Mr. Yoo has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

181.    Mr. Yoo seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT IX

**(Retaliation for Engaging in Protected Activity in Violation of New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (including Letgo, Ambatana, Development and Cramer)**

182.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

183.    Mr. Yoo engaged in protected activity(ies) under the NYCHRL, including, but not limited to, by expressing concerns regarding, and otherwise opposing, the harassment and discrimination he and others were subjected to, based on the race and national origin of himself and others.

184.    The Defendants unlawfully coerced, intimidated, threatened and/or interfered with Mr. Yoo's exercising of or enjoyment of rights granted by the NYCHRL.

185.    More specifically, the Defendants discriminated and/or retaliated against Mr. Yoo for engaging in activity protected under the NYCHRL, including by subjecting Mr. Yoo to adverse actions, including, but not limited to, subjecting Mr. Yoo to a harassing and hostile work

environment, increased quotas in relation to his non-Asian, non-Korean co-workers, an unjustified and unfair PIP, and/or terminating Mr. Yoo's employment.

186.   Cramer aided and abetted in the Company's discriminatory actions, intended to discriminate against and/or retaliate against and/or coerce, intimidate, threaten and/or interfere with Mr. Yoo's exercising of, or enjoyment of, one or more rights granted by the NYCHRL, and/or knew of their supporting role in an enterprise designed to deprive Mr. Yoo of the rights guaranteed to him under the NYCHRL.

187.   The Defendants' actions were wanton, malicious, and/or oppressive.

188.   The Defendants acted willfully and/or with reckless disregard to the state protected rights of Mr. Yoo.

189.   As a direct and proximate result of the Defendants' violation of the NYCHRL, Mr. Yoo has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

 Mr. Yoo seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT X

### (Failure to Pay Overtime in Violation of 29 U.S.C. §§ 201 et seq.)

### Plaintiff v. All Defendants (including Letgo, Ambatana, Development and Cramer)

190.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

191.    At all relevant times, the Company was an enterprise as defined under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (hereinafter, "FLSA").

192.    Indeed, at all relevant times, the Company had annual gross volume of sales made or business done greater than or equal to $500,000.

193.    Furthermore, at all relevant times, the Company was an enterprise engaged in interstate commerce.

194.    Additionally, during all relevant time periods, Mr. Yoo was an employee who was engaged in interstate commerce.

195.    Mr. Yoo was not exempt under the FLSA, and as such was owed overtime pay of 1.5 times his base rate when he worked more than 40 hours per week.

196.    The Company was aware that Mr. Yoo was a non-exempt employee under the FLSA and willfully failed to pay Mr. Yoo the wages he was owed.

197.    The Defendants always scheduled Mr. Yoo to work more than 40 hours per week and Mr. Yoo did in fact always work more than 40 hours per week.

198.    Mr. Yoo was not paid anything extra for the overtime hours he worked, as he received a salary plus commission that was less than 50% of his compensation and received no extra pay for working overtime hours.

199.    As such, the Defendants paid Mr. Yoo less than the wages owed to him under the FLSA and equivalent state law.

200.     Cramer is a corporate officer and/or manager of the Company and exercised significant operational control over the Company (and the Plaintiff), including because he had the power to hire and/or fire employees, the power to determine salaries and the responsibility to maintain employment records. As such, Cramer is individually liable under the FLSA.

201.     The Company, as well as Cramer, knowingly and willfully failed to pay Mr. Yoo all pay that he was owed in violation of the FLSA.

202.     As a direct and proximate result of the Defendants' violations of the FLSA, Mr. Yoo has suffered and continues to suffer damages, including, but not limited to, lost wages.

203.     Mr. Yoo seeks all damages to which he is entitled, including, but not limited to, lost wages, liquidated damages in the amount of the lost wages for a knowing and willful violation of the FLSA, interest on the lost wages and liquidated damages, attorneys' fees, and costs.

## COUNT XI

### (Failure to Pay Overtime in Violation of 12 NYCRR 142 - Promulgated under Article 19 of the New York State Labor Laws)

### Plaintiff v. All Defendants (including Letgo, Ambatana, Development and Cramer)

204.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

205.     The Company is an employer under Part 142 of Title 12 of the Official Compilation of Rules, and Regulations of the state of New York promulgated under Article 19 of the New York State Labor Laws ("12 NYCRR 142") and Mr. Yoo is an employee of the Company under 12 NYCRR 142.

206.     Mr. Yoo was not exempt from New York overtime pay laws and as such was owed overtime pay of 1.5 times his base rate when he worked more than 40 hours per week.

207.    The Company was aware that Mr. Yoo was a non-exempt employee under New York overtime pay laws and willfully failed to pay Mr. Yoo that wages he was owed.

208.    The Defendants scheduled Mr. Yoo to work more than 40 hours per week, and Mr. Yoo did in fact work more than 40 hours per week.

209.    Mr. Yoo was not paid anything extra for the overtime hours he worked, as he received a salary plus commission that was less than 50% of his compensation and received no extra pay for working overtime hours.

210.    As such, the Defendants paid Mr. Yoo less than the wages owed to him under New York law.

211.    Cramer is an agent or officer of the Company who paid Mr. Yoo less than the wages owed to him under New York law.

212.    Defendants knowingly, willfully and in bad faith failed to pay Mr. Yoo time and half for overtime pay for all hours worked in excess of 40 hours per week.

213.    As a direct and proximate result of the Defendants' violations of 12 NYCRR 142, Mr. Yoo has suffered and continues to suffer damages, including, but not limited to, lost wages, interest on lost wages, attorney's fees, and costs.

214.    Mr. Yoo seeks all damages to which he is entitled, including, but not limited to, lost wages, liquidated (i.e. double) damages, interest on lost wages and liquidated damages, attorneys' fees, and costs.

WHEREFORE, the plaintiff, Brian Yoo, respectfully prays that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendant liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for his emotional pain, mental anguish, loss of enjoyment of life, suffering, and other emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff his lost wages, including overtime-related wages;

H.  Award the Plaintiff liquidated damages;

I.   Award the Plaintiff punitive damages;

J.  Award the Plaintiff his reasonable attorney's fees;

K.  Award the Plaintiff interest and costs;

L.  Award the Plaintiff all other damages to which he is entitled; and

M.  Grant such further relief as is just and equitable.

Respectfully Submitted,

BRIAN YOO

By his attorneys,

THE LAW OFFICES OF WYATT
& ASSOCIATES P.L.L.C

Date:  June 7, 2021                    By:      ___/s/Trevor Brice_____

Benjamin J. Wyatt, NY BAR #5604590
BWyatt@Wyattlegalservices.com

Timothy Brock, NY BAR # 5614151
tbrock@wyattlegalservices.com

Trevor R. Brice NY BAR # 5816087
Trevor@wyattlegalservices.com

Main Office
The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office
The Law Offices of Wyatt & Associates,
P.L.L.C.
418 Broadway, 2nd Floor
Albany, NY 12207